UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MATRICE RUPERT and TOMMY WILLIAMS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:22-cv-23  PPS-JEM |
| GARY RESIDENTS 2, LLC, *et al.*, | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The parties in this case arrived at a settlement after an extended settlement conference before Judge Martin. The terms of the settlement were placed on the record and all parties acknowledged their agreement with all the material terms. The Plaintiffs, Matrice Rupert and Tommy Williams, now have second thoughts and seek to set the settlement aside. In that regard, they have filed a number of motions including Plaintiffs ' FRCP Motion to Set Aside Rule 60(d)(3) [DE 84], FRCP Rule 60 Fraud Upon the Court (b)(2)(3)(4)(D)(3) [DE 85], FRCP Rule 55 Motion for Default Judgment [DE 89], and FRCP Rule 55 Motion for Default Judgment for Fraud Under FRCP Rule 9 Attach Brief [DE 90]. For the following reasons, all four motions will be denied, and the settlement agreement the parties reached and placed on the record will be enforced.

**Background**

Although the facts in this pro se complaint are somewhat difficult to decipher, Plaintiffs seem to be suing for a wrongful eviction, claiming they did not receive proper

-1-

notice and were denied due process.[1] The remaining defendants are Gary Residents 2, LLC, and Marc Laterzo (an attorney who allegedly appeared in the eviction process). The procedural history of this case is set forth fully in Defendant Gary Residents 2, LLC's response to Plaintiffs' motion to set aside the settlement agreement [DE 92 at 1-4], and I see no reason to repeat it here.

On September 11, 2023, the parties participated in a settlement negotiation in front of Magistrate Judge John E. Martin.  Rupert and Williams appeared in person pro se, and everyone else appeared via video teleconference: attorney Jennifer E. Davis for Defendant Gary Residents 2, Marc Laterzo representing himself, and also Matt Henriques from Greater New York Insurance.

After an extended back and forth, Judge Martin extensively put the terms of the settlement agreement on the record:

> We have been conducting a settlement conference on this matter all

---

[1] This Court is aware of its duty to police its subject matter jurisdiction, and I did consider whether jurisdiction was proper in this case given the *Rooker-Feldman* doctrine which "prevents lower federal courts from reviewing state-court judgments, over which only the United States Supreme Court has federal appellate jurisdiction." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011).  However, *Rooker-Feldman* does not bar district courts from ruling on alleged due-process violations that are "independent of and complete prior to the entry of the challenged state order." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004) (quotation marks and citation omitted).  Additionally, at times, Plaintiffs seem to be arguing improper animus or discrimination based upon race [DE 1 at 11, 13], and claims like discriminatory housing practices are not barred by *Rooker-Feldman*.  *See Lyons v. Gene B. Glock Company, Inc.*, 844 F. App'x 866, 869 (7th Cir. 2022).  In the revised complaint, Plaintiffs seem to be stating a Constitutional violation. [DE 11.]  Finally, I note that Plaintiffs are seeking compensatory and punitive damages [DE 1 at 13, DE 11] and purport their demand was always $5,000,000.00 [DE 85 at 2, DE 11 at 4.]

> morning, and we have reached a settlement. The - - and I'm going to put that settlement on the record, and then I'm going to ask Ms. Rupert, Mr. Williams, and Mr. Henriques if this is their settlement and they agree to be bound by it. And I will tell all three of those of you that are involved in this that once you agree on this, there is no turning back. It is a final settlement, and so it is enforceable in the court. So it is the final settlement.
>
> What the settlement is, is it's a $5,000 total, $2,500 to each person. $2,500 to Ms. Rupert. $2,500 to Mr. Williams. It will include signing - - both sides signing a mutual nondisparagement agreement; a mutual nondisclosure; and a mutual full release of any and all claims; suits, known or unknown; allegations; or complaints arising out of the tenancy at issue here.
>
> Also, the Miller Beach Apartment is going to dismiss the case and forgive the approximately $9,234.34 that they believe is owed as the subject of that lawsuit in the Gary City Court.

[DE 88 at 3.] Judge Martin then proceeded to ask each party if those were the terms of the settlement that they agreed to, and they all responded affirmatively. [*Id.* at 3-5.]

As to Plaintiffs, Judge Martin stated: "Ms. Rupert, you have been involved here this morning with this negotiations. We have talked about this. You understand that once you agree and once we close the record, that this is the final settlement and there's no turning back. You understand that?" [*Id.* at 4.] Ms. Rupert replied, "Yes, Your Honor." *Id.* And Mr. Williams responded that he understood as well. *Id.* The parties then discussed how to effectuate the settlement – with Ms. Davis agreeing to take care of the check and paperwork, and Mr. Laterzo to file the dismissal of the state court action within a few weeks. The parties agreed to meet at the offices of defense counsel in Merrillville, Indiana, for the purpose of finalizing the settlement on September 28, 2023, at 10:00 a.m. [*Id.* at 6.]

Just 7 days after the settlement conference, Plaintiffs filed the instant motions to set aside the settlement, a motion claiming fraud on the court, and two motions for default judgment. [DE 84, 85, 89, 90.] In Defendants' response, they ask that I enforce the settlement agreement reached by the parties. [DE 92 at 8-12.]

## Discussion

The district court has inherent authority to enforce a settlement agreement reached in a case pending before it. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). An agreement to settle claims in a federal court is enforceable "just like any other contract." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (quoting *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380-82 (1994). Because state law governs whether a contract to settle the case was made, *Dillard*, 483 F.3d at 506, Indiana law applies here. Indiana strongly favors settlement agreements, which are governed by the same general principles of contract law as any other agreement. *See Indiana State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind. 1998).

In this case, the parties reached a settlement agreement and placed the material terms on the record. This is consistent with most judges and magistrates' practice to routinely put the terms on the record so as to ensure "that the parties agree[ment] is a 'solid, indeed an unimpeachable, basis for [] finding [] that the case had indeed been settled." *Allen v. Dana*, No. 1:10-cv-281, 2011 WL 3163232, at *2 (N.D. Ind. July 26, 2011) (citing *Lynch, Inc.*, 279 F.3d at 490-91)). I believe the terms here are very clear and

unambiguous as written, and are conclusive as to the agreement's meaning. *See In re Forum Group, Inc.*, 82 F.3d 159, 163 (7th Cir. 1996) ("When the terms of the contract are clear and unambiguous as written, those terms are conclusive as to the contract's meaning.").

Although Plaintiffs complain that there was no signed contractual agreement [DE 84 at 1], under Indiana law, an oral agreement to settle a lawsuit is generally enforceable. *See, e.g.*, *Zimmerman v. McColley*, 826 N.E.2d 71 (Ind. Ct. App. 2005) (enforcing oral settlement agreement regarding an automobile accident). "A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Id.* at 77. "Settlement agreements are governed by the same general principles of contract law as any other agreement," and thus "[a]n offer, acceptance, plus consideration make up the basis for a contract." *Id.* at 76; *see also Pohl v. United Airlines, Inc.*, 110 F. Supp. 2d 829, 837 (S.D. Ind. 1999). Determining whether there has been a meeting of the minds "is a factual matter to be determined from all the circumstances," and the Court should refer "not to the parties' subjective intents but their outward manifestation of it." *Zimmerman*, 826 N.E.2d at 77. Here, there was clearly a meeting of the minds. All parties specifically agreed on the record to the explicit terms recited by Judge Martin. "Having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (citation omitted).

It is neither here nor there that Plaintiffs are now unhappy with the settlement. *See Lewis v. School Dist. #70*, 648 F.3d 484, 486 (7th Cir. 2011) (affirming settlement where the magistrate judge "recited the terms of the settlement on the record and confirmed the parties' agreement with those terms."); *Lynch*, 279 F.3d at 490-91 (dictating the terms of a settlement agreement to make sure that the parties agree is a "solid, indeed an unimpeachable, basis for [] finding [] that the case had indeed been settled"); *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) ("If a party to a [] suit who has previously authorized a settlement changes his mind . . . , that party remains bound by the terms of the agreement.").

Plaintiffs argue there were "pressure tactics" used during the negotiation, and they were being rushed to settle the case, but that duress argument has no merit. [DE 84 at 1, 5.]  In deciding whether a person agreed to settle under duress, "the ultimate fact to be determined is whether or not the purported victim was deprived of the free exercise of his own will."  *Youngblood v. Jefferson Cnty. Div. of Family and Children*, 838 N.E.2d 1164, 1170 (Ind. Ct. App. 2005) (quoting *Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 283 (Ind. 1983)); *see also Carrasco v. Grubb*, 824 N.E.2d 705, 711 (Ind. Ct. App. 2005) ("[I]n order to avoid a contract on the basis of duress, there must be an actual or threatened violence of restraint of a man's person contrary to law, to compel him to enter into a contract or discharge one.").

Plaintiffs present no evidence or argument suggesting that they agreed to settle against their will.  And nothing from the transcript of the settlement suggests in any

way that Judge Martin (or anybody else) unduly coerced the Plaintiffs into doing something they did not want to do. Instead, the transcript reflects that Judge Martin handled this case in the same way he does all others — in his usual polite and respectful way. There isn't even a hint of hesitation on the part of either of the Plaintiffs' when they agreed to the favorable settlement they had achieved. Plaintiffs conclusory statement that "there was a pressure tactic that if we don't make our mind on 9/11/2023 by the end of the court call our cause of action would be dismissed" is not borne out by the transcript and in all events would be insufficient. [DE 84 at 1.] *See, e.g., Tuttle v. SMS Corp. of America*, No. 1:07-cv-1238-DFH-JMS, 2008 WL 4082433, at *1 (S.D. Ind. Aug. 29, 2008) ("[C]onclusory label of 'duress' adds nothing to plaintiff's assertion that she now regrets having agreed to the terms of the settlement."); *Porter v. Chicago Bd. of Educ.*, 981 F.Supp. 1129, 1132 (N.D. Ill. 1997) ("Plaintiff's generalized expression of subjective feeling is fatally conclusory and wholly unsupported by specific factual averments to support a claim of duress.").

     None of Plaintiffs' other arguments are successful, either. Oddly, Plaintiffs attach the instructions for settlement conference cases assigned to *Judge Moody*, which discusses a pre-conference demand and offer, criticizing that "Jennifer Davis and Mark Laterzo [should] lay their cards on the table, without lying in wait for the opportune time to surprise." [DE 84 at 2.] But this settlement conference was held in front of Judge Martin, and I can't see how suggested instructions for Judge Moody's settlement conferences have anything whatsoever to do with the settlement conference that

occurred in this case.  The same goes for Plaintiffs' criticism that the attorneys for Defendants, Jennifer Davis and Marc Laterzo, as well as Matt Henriques, appeared by Zoom at the settlement conference. [DE 84 at 3.] Even Judge Moody's instructions (which as I mentioned before are not even relevant to this case) about attendance contain a caveat that "parties with ultimate settlement authority must be personally present at the settlement conference, *unless otherwise ordered by the Court*" [DE 84 at 3 (emphasis added)].  In this case, Judge Martin clearly consented to the Defendants appearing via Zoom with a insurance representative.  Indeed, Plaintiffs were at a status conference in front of Judge Martin on August 3, 2023, where he granted defense the ability to appear by Zoom, so their attendance on video teleconference was not a surprise to Plaintiffs going into the settlement conference. [DE 81.]  Nothing about the fact that Defendants attended the settlement conference by Zoom invalidates the legitimate settlement reached.

Consequently, Plaintiffs cannot back out of the September 11, 2023 settlement agreement.

**Conclusion**

Pro se Plaintiffs Matrice Rupert and Tommy Williams' FRCP Motion to Set Aside Rule 60(d)(3) [DE 84], FRCP Rule 60 Fraud Upon the Court (b)(2)(3)(4)(D)(3) [DE 85], FRCP Rule 55 Motion for Default Judgment [DE 89], and FRCP Rule 55 Motion for Default Judgment for Fraud Under FRCP Rule 9 Attach Brief [DE 90] are ALL DENIED. Defendant Gary Residents 2, LLC's motion to enforce the settlement agreement [DE 92]

is GRANTED: the settlement placed on the record on September 11, 2023, is controlling and will be enforced.

Plaintiffs and Defendants are ORDERED to attend an in-person hearing in front of Magistrate Judge John E. Martin to finalize the settlement on Monday December 18, 2023, at 11:00 a.m. Central/Hammond time.

**SO ORDERED**.

ENTERED: November 17, 2023.

                                           /s/   Philip P. Simon
                                           PHILIP P. SIMON, JUDGE
                                           UNITED STATES DISTRICT COURT